Chief Justice Watkins delivered the opinion of the Court. This was an action of debt on a promissory note to the Bank, made by Samuel C. Wheat, Henry Cheatham, and the appellee, dated July 13th, 1843, and due at twelvemonths after date. The action was commenced on the 18th February, 1848. The plea was nit debet, and that the cause of action did not accrue within three years. The plaintiff joined issue to the first plea, and replied to the second that the cause of action did accrue within three years. As to the issue upon this replication, the evidence on the trial was, that Wheat, the principal debtor, on the 14th of September, 1844, paid to John H. Grease, as Financial Receiver of the Bank, $74 56, for the curtail and interest on the note in question, which was received by the Bank for that purpose, and so appropriated and endorsed on the note; that the security on the note was deemed satisfactory by the Receiver of the Bank, and no new note required, and that the payment was received and treated by the Bank as a renewal for twelve months from the 13th of July, 1844, Upon this evidence, the court, sitting as a jury, found for the defendant; to which finding, the plaintiff excepted, and tendered her bill of exceptions, setting out the evidence. From the judgment entered on the verdict, the plaintiff has appealed. In consequence of intimations given in former opinions of this court, rendering it at least doubtful in the minds of the profession whether the course here pursued to bring up a cause for revision of alleged errors in the court below, be not the appropriate mode, we deem it our duty to considar such questions as are argued by the appellant to be presented on the record. The case of Woods vs. The State Bank, (7 Eng. R. 693,) and the reasons there given why the main question discussed in that case, as to when the statute of limitations begins to run upon notes executed to the State, under the provisions of the 9th, 10th, and 11th sections of the Liquidation Act, approved 31st January, 1843, did not arise upon that record, are to be regarded as decisive of the present case. There, the Bank replied to the plea, that the defendant, on a certain day before the institution of the suit, made a payment upon the note sued on, and the defendant rejoined, re-affirming his plea, that the cause of action did not accrue within three years. The court held that if a demurrer had been interposed to that replication, the law would have been for the defendant, because, according to the pleadings and under the general law concei’ning this defence, the statute bar commenced running from the maturity of the note, or from the time the payment was alleged to have been made, which was more than three years before the institution of the suit. Because the statute was not only a special one, applicable to a particular class of debtors, i.e. debtors to the State Bank, but only to a portion of those debtors, inasmuch as the Liquidation Act itself contemplated the execution of other notes to the Bank, to which the provisions of those sections would not apply. And the conclusion of this court in that case was, that the court below could not have applied the provisions of the section cited, unless, in addition to the fact of payment, it had been also alleged, in the pleadings, that the note in question was one of those that were to be governed by these provisions. We are not required here to decide whether, in order to take a case out of the general statute of limitations, it is necessary to reply specially the new promise or a part payment. On this point, the cases of Trustees R. E. Bank vs. Hartfield, (5 Ark. R. 557,) and Ringgold vs. Dunn, (3 Eng. 497,) are directly opposed, the former holding that it is no- departure to reply the part payment, and the latter that the new promise must be specially replied. Certainly, in view of these decisions, the safer course would have been to reply specially; and unless the replication is designed merely to tender an issue as to the bar set up in the plea, wTe should be inclined to hold it necessary for the plaintiff to reply specially any matter upon which he relies to remove the statute bar, or bring himself within any of its exceptions. The presumption, arising from part payment, of an intention to pay the residue, is prima facie but not conclusive, and may be rebutted by evidence of a contrary intention. The new promise or acknowledgment must be absolute, and not by way of compromise, composition, or special or conditional, which, if the plaintiff accepts, he is put to his action on the new promise. As the true object of pleading is that each party may be apprised, before the trial, of the matter on which his adversary relies, there would seem to be as much propriety in requiring the part payment, or new promise, to be specially replied, as that the plaintiff was under a disability, or non-suit, and sued anew within the year, or that the defendant was absent or absconding. Nor are we required to construe those sections of the Liquidation Act, and de-cicle the -various questions that might arise upon their legal effect. It is claimed, on behalf of the Bank, that the effect of the part payment by Wheat, was not merely to make it a new period from which the statute would again commence running as to the residue, but was equivalent to the making of a new note by the principal and his securities, to become due a year from the time of payment. If the debtor should claim to be exempt from suit in order to entitle himself to indulgence under the provisions of those sections, he would have to aver and prove a compliance with them, by the payment of the curtail and interest within the time and from year to year, as required, and that the officers of the Bank were satisfied with the securities on the note. It was, in our opinion, equally necessary for the Bank, in order to remove the statute bar, to have replied the facts necessary to bring himself within the provisions of the special act. If the law is to be upheld as a valid contract between creditor and debtor for extension of time to the latter, it can only be so because equally binding upon both parties. The fact of part payment by one of the joint debtors, is not the only matter in issue, butitis also the intention of the parties making and accepting the payment, that it should operate as a renewal for a year from that time. Apart from the tendency of the later decisions, that the plaintiff, though adhering to the original promise as the foundation of the action, should specially reply in the nature of a new assignment, any matter necessary to avoid or displace the bar of the statute, it was incumbent on the plaintiff here to have replied the facts necessary to bring the note in question within the provisions of the Liquidation Act, in order to make the proof admissible for that purpose. In Woods vs. The State Bank, a repleader was awarded ; but, as in the case of The State Bank vs. Pryor, (7 Eng. R. 698,) the judgment in this case, being in favor of the defendant, must be affirmed. But in reviewing the errors alleged to be presented on this record, the court cannot omit to notice the mode in which they are presented, and the practice likely to be entailed upon this court, of reviewing errors of fact as well as of law. In the case of The Real Estate Bank vs. Rawdon et al., (5 Ark. 558,) the correctness of such a practice was for the first time considered by this court. There, the issue was submitted to the court below sitting as a jury for trial, and the defendant excepted to the decision of the court, and brought error. The court, in the first opinion reported, (Ib. 567,) took cognizance of the case distinctly upon the ground that the facts were admitted upon the trial on an agreed case, which, like a special verdict, left no dispute about the facts, but, in either case, the only question was one of law, i.e. whether the judgment pronounced was the legitimate conclusion, from the facts stated. In a subsequent opinion, in the same case, ib. 578, the court, apparently not regard-' ing the bill of exceptions as an agreed case, take a distinction between the verdict of the jury and the judgment of the court sitting as a jury, holding that, in the latter mode of trial, the combined result of any errors which may have been committed, is presented in the judgment of the court; that this finding of law, and fact is then reached and reviewed together, and to present these properly before the court is the office of the bill of exceptions. To this opinion, Rumo, Chief Justice, dissenting ib. 586, held that the mode of trial made no difference as to the power of this court to revise the facts, and he concluded that if, by trying an issue of fact before the court sitting as a jury, either party could without raising any question of law on the trial, bring up, by bill of exceptions to the decision, all the evidence adduced in the court • below, before this court for revision or trial de novo, the practice if adhered to would involve this court in perplexities, and force it into the exercise of a jurisdiction not conferred upon it by law, and alike prejudicial to public justice and private rights. The next case is Campbell vs. Thruston, (1 Eng. 442,) where the issue was submitted to the court sitting as a jury, and a bill of exceptions taken, to the judgment, setting out the evidence. The decision there was, that the case, as disclosed by the record, presented no question for the consideration of this court. In the language of the opinion, “ The facts in the case were before the court sitting as a jury precisely as they would have been before the jury, if one had been required. The court was bound, not only to consider the law arising upon the testimony, but also to consider and determine upon the competency, the relevancy and the weight of the testimony, as well as the credibility of the witnesses ; and therefore its judgment as to the facts may have been influenced by considerations or circumstances which cannot be made to appear to a revising court.” In Farrelly vs. Cross, (5 Eng. 405,) where the only issue was on the plea of nul tiel record, necessarily tried by the court, the plaintiff excepted to the decision, setting out the evidence which could only have consisted of the record produced. There, this court approved of the distinction taken in the opinion delivered by Sebastian, J., in the case of The R. E. Bank vs. Rawdon et al., between trials of fact submitted to a jury and to the court sitting as a jury. In this, the court was evidently influenced by the consideration that the issue must have been tried by the court, and that there could be no dispute about the facts, as the record upon inspection must prove itself. In the subsequent case of The State vs. Jennings, use, &c., (5 Eng. 452,) where the subject is again considered, the remarks of the court so far limit and qualify the decision in Farrelly v. Cross, as in effect to overrule it as an authority except in the particular class of cases to which it belonged. Such being the state of the decisions, the practice in question can by no means be regarded as settled, and we are imperatively required to affirm or disaffirm it. The evidence set out in the bill of exceptions, in this case, is brief, and if applicable to any issue raised by the pleadings, a jury, or the court sitting as a jury, might readily find from it one way or the other as to the facts which it conduced to prove. But on principle, if the practice be admitted in one case, it must extend to all cases without distinction, where issues of fact are tried by the court sitting as a jury, and the whole mass of testimony, no matter how voluminous or conflicting, is brought before this court for revision. By the organization of this court, the exercise of its appellate jurisdiction in chancery causes, is according to the marked and in the main well settled distinctions between common law and chancery proceedings. The appeal in chancery is a re-hearing, or trial of the cause de novo, upon the same pleadings and written evidence, heard and determined by the decree in the court below, and to some extent necessarily involves the determination of facts. The pleadings are usually a sworn statement of facts sustained or disproved by documentary evidence and depositions. The advantages of the proceedings in equity as in the civil law, would seem to be the means afforded for cautious and mature deliberation. Though the witnesses are not produced before the court, so that the determination as to any fact is rather by the number of witnesses than the weight of evidence, yet it is argued that as a corrupt witness will hesitate to commit perjury in a solemn deposition, of which the writing is a lasting memorial, so, on the other hand, honest witnesses are betrayed into false statements in the confusion or excitement of a public trial. The appropriate function of chancery is to determine the rights of the parties, and so to afford adequate or specific relief, upon admitted or ascertained facts, rather than to try a disputed question of fact, which may be ascertained by the master or sent upon the issue to a jury. The fundamental theory of the common law is, that questions of law are to be responded to by the court; questions of fact, by the jury. The trial by jury is indeed the distinguishing feature of the common law, not merely because the right to a trial by jury is one of which the citizen cannot be deprived ; but it is to be regarded as a great political institution, by which every qualified citizen has the right to serve on juries and participate in the administration of justice. The trial by jury is a right which protects the citizen- — -a duty which elevates him. The constitutional guaranty of the right would be imperfect unless it implied that questions of fact shall not be tried by the courts. It is true we interpret this right as it existed and descended to us from the common law. The trial by jury, like every other human institution, had its imperfections, and was liable to abuse. To correct this, there was anciently the proceedings for attaint of the verdict; in more modern times, superseded by the practice of granting new trials. The power to grant new trials, does not proceed upon the assumption that the court may reverse the verdict of a jury, or render such verdict as the jury ought to have given; but only this, that the verdict being set aside, the same matter shall be tried again by another jury. By our statute, this power of the circuit court is limited to the granting of two new trials. At the common law, the exercise of this salutary power was wisely limited to the court or judge before whom the trial was had, for the reason that, presiding at the trial, the whole evidence, the conduct, appearance, and demeanor of the parties, the witnesses and the jurors passed in review before him, so that he became qualified to judge if the verdict be against the weight of evidence, or produced by undue influence, bias, or prejudice. According to the practice in England, motions for new trial in difficult cases were adjourned to the same court sitting in bank, being virtually before the judge who presided at nisi prius. A similar practice prevails in some of the States of this Union, where the same judges, who try causes on the circuit, when assembled together, constitute a court for the correction of errors, to which motions for new trial made at the circuit, are adjourned for argument, and the advice of all the judges. Butin all of the United States, with two or three exceptions, the office of a writ of error is, as at the common law, defined by Blackstone, (3 Com. 406,) to be that it lies only upon matter of law arising upon, the face of the proceedings, so that no evidence is required to substantiate or support it, there being no method of reversing an error in the determination of facts, but by an attaint or a new trial, to correct the mistakes of the former verdict.” An assignment for error that the verdict is contrary to evidence, was unheard of at the common law. The writ of error lay not to try the cause de novo, but to correct any error of law in the trial already had. The evidence formed no part of the record, and only such facts as were, necessary to present fairly the disputed questions of law arising on them. The demurrer to evidence, which made the evidence facts, the agreed statement of facts, the special verdict, present only questions of law. A general verdict not set aside on motion for new trial, is conclusive as to the issue so found, and all facts that are involved in that issue, and unless the plaintiff in error will show by his bill of exceptions that the jury were influenced to give a wrong verdict by some error of the court, as in admitting or excluding testimony or for misdirection, the fact so found must forever be regarded as true. If on error, the judgment be reversed, and a new trial awarded, it is not because the jury found a wrong verdict, but because the judge mistook the law. As an abstract question, it would not be contended that this court possesses the power to determine facts, and so deprive the suitor of the trial by jury; but it may well be doubted whether the practice of the appellate court in awarding new trials because the finding is supposed to be contrary to evidence, would not be an indirect invasion of the province of the jurjq as effectual as if the power were openly asserted. The appeal allowed by statute in common law cases, can only be regarded as a cumulative remedy for the convenience of the suitor, governed by the same rule of decision applicable to writs of error. The difficulty would seem to have grown out of the provision of the statute that issues of fact shall be tried by the court, where neither party requires a jury. (Rev. Statutes, title Practice at Law, sec. 90.) The scope and policy of the statute are, that suitors may waive the trial by jury; and for their convenience, or the despatch of business, elect to have the cause tried by the court. But, in such case, the court acts in the stead of a jury for the trial of issues of fact. The parties may waive the trial by jury, but neither party, as against his adversary, can waive the conclusiveness of the finding by the court. It was not the design of the statute to break down the fundamental distinction at the common law, between the province of the court and that of the jury; or at the pleasure of the parties, by electing that mode of trial, to confer upon this court a jurisdiction for the eor-rection of error in fact. The theory is, that when the facts are made to appear, just as when the allegations of Any pleading are' confessed by demurrer, the duty of the court is to declare what the law is, arising upon' those facts, and this is the appropriate function of the court. True, of necessity, in every general verdict, the issue involves, to a greater or legs extent, mixed questions of law and fact; and the jury rftust receive instructions as1 to the law froto the court, because if the jury undertake to determine the law, there is no mode of ascertaining what view they took of it, and the error, if any, can never be corrected. So; it is the duty of a judge, sitting as a jury, to declare, upon the motion of either party, what his opinion of the law is upon any point applicable to the case made by the evidence. It- would be as' easy in practice for him to do this, so that the? parties coul'd1 make their exception, as where he declares his opinion'Of the law to the jury. If there be no ex-eeptio'n to any ruling in admitting or rejecting testimony, and the parties neglect to call for such an opinion, the finding of the court and the verdict of the jury as to' the fact, are equally conclusive. Because, in either case, it cannot be'known whether the court or jury found according to the weight of the' evidence, or from a misconception of the law. On principle, there can be no more just ground of exception to the finding of the court upon the evidence, than to the verdict of a jury. Whenever an issue of fact is tried according to thecourse of the common law, whether by the court, a jury, or by arbitrators, the transaction, out of which the dispute arises, is rehearsed before the tribunal selected to determine the fact. The witnesses are subjected to that most searching and infallible test of truth — a public examination. As in a dramatic and life-like' representation, all the avenues of sense are open to receive impressions of truth. A bill of exceptions, undertaking to go behind the facts found, by setting out the evidence, is of necessity unfair, because it conveys to the mind- of the appellate court no1 adequate impression of the weight of testimony. If the supreme court could be thus forced to review the determination of facts, we would not shrink from the duty, however onerous ; but we must refuse to exercise such a jurisdiction, because it is unwarranted by law, is foreign to the organization of this court, and a dangerous assumption of power. It is not the design of this opinion to raise any doubt as to the practice established in the case of Hanley vs. Robins’ Heirs, (3 Ark. 144,) and ever since sanctioned and adhered to in numerous cases. According to the practice there settled, the party who moves for a new trial, because the finding is against law or evidence, for surprise, newly discovered evidence, misconduct of the jury or the like, appeals to the sound equitable discertion of the court below; and though such motion is an implied waiver of previous exceptions, yet, if he has reserved exceptions as to any ruling or direction of the court during the progress of the trial, he may assign the same specific errors of law as part of the grounds of his motion for new trial; and if the motion be overruled, he may except thereto, setting out the evidence and instructions, and showing the various grounds of bis exceptions as the trial progressed- This, although a departure from the common law, is to be regarded as a simple and comprehensive mode of bringing up causes for revision in this court. In such case, the court will look into the evidence, to enable it to determine if there be error of law in any ruling or direction of the court below, and not to inquire whether the. verdict be against the weight of evidence. It is true, this court have in some cases awarded new trials because the verdict was unsupported by evidence, but always with reluctance, and with so many, qualifications that the rule virtually amounts to this, that there must be a total failure of evidence as to some material fact necessary to uphold the verdict, and is the same in effect as if the party moving for a new trial had demurred to the evidence. So that the only evil liable to result from the practice that has grown up, of encumbering the record with a mass of testimony, instead of the facts proven, or which it may conduce to prove, is the increased expense to suitors and the drudgery imposed upon the bar and the court. But it is to be understood that if a party merely excepts to the finding of the court or jury setting out the testimony without any motion for new trial, and without any exception whereby he shall put his finger upon the alleged error of law as to any ruling or decision of the court below, there is no case presented for the consideration of this court. Such a practice, if allowed to extend itself, would break down the efficiency and dignity of the circuit courts, and they would become in effect so many commissioners to certify evidence up to this court in any given cause for revision. And for this objection also, the judgment here appealed from, ought to be affirmed.